IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE M. DITZLER, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 3:2005-325 |
| | ) |
| | ) |
| JAMES D. WESOLOWSKI and | ) JUDGE GIBSON |
| DIAMOND STATE TRUCKING, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (Document No. 35). This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. Venue is appropriate pursuant to 28 U.S.C. § 1391(a)(2).

By way of background, this is a personal injury action stemming from a motor vehicle accident which occurred along the Pennsylvania Turnpike on August 16, 2003. Plaintiff, Jacqueline Ditzler, a motorist who alleges that she was seriously injured in the accident, filed suit on August 8, 2005, against Defendants, another motorist and his employer, claiming negligence. Specifically, Plaintiff alleges that she was driving her vehicle in an eastbound direction when Defendant James Wesolowski ("Wesolowski"), who was driving a tractor-trailer truck in a westbound direction at an excessive rate

of speed, lost control of his vehicle, struck the median barrier and entered the eastbound lane of travel ultimately causing the trailer unit of the tractor-trailer truck and its load to detach from the truck and strike Plaintiff's vehicle (Document No. 1). At the time of the collision, Wesolowski was operating the tractor-trailer truck within the course and scope of his employment with Defendant Diamond State Trucking, Inc. ("Diamond State"), an Arkansas transportation company.

Plaintiff's three count complaint alleges that Wesolowski and Diamond State were negligent in causing the accident and that Diamond State is vicariously liable for Wesolowski's negligence. Plaintiff seeks punitive damages on all counts.

For purposes of establishing liability and punitive damages, Plaintiff has submitted a Preliminary Case Report prepared by Cecil H. Lane of the SALT Institute ("SALT Report") (Document No. 36-2, Exhibit A). The SALT Report sets forth 13 opinions based upon Defendants' alleged violations of the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 C.F.R. 325- 399, and/or trucking industry standards (Document No. 36; 36-2, Exhibit A). The 13 opinions are summarized as follows: (1-2) Diamond State acted in reckless disregard for the safety of the general motoring public by allowing Wesolowski to operate a commercial vehicle as he had little to no experience and training; (3-5) Diamond State failed to obtain Wesolowski's driving history and criminal background as required by FMCSR Part 391.23 and industry standards; (6) Diamond State failed to obtain a post-accident drug test for Wesolowski; (7-9) State Diamond taught drivers to falsify logs and, consequently, Wesolowski was over hours and operating his vehicle in a state of fatigue; (10) Diamond State did not provide satellite movement records; (11-12) Roy Honeycutt lacked the ability to serve as Safety Director and failed to perform his duties properly; and (13) Diamond State failed to retain logs, movement records,

2

communications data and operational documents in accordance with FMCSR.[1]

Defendants' Motion for Partial Summary Judgment seeks the dismissal of Plaintiffs' claims for punitive damages with prejudice (Document No. 35). After careful consideration and for the reasons that follow, this Court will grant in part and deny in part Defendants' motion.

## II. UNDISPUTED FACTUAL HISTORY[2]

This action arises from a multi-vehicle accident that occurred on August 16, 2003 on the Pennsylvania Turnpike in Napier Township, Bedford County, Pennsylvania. No fatalities occurred as a result of the accident at issue. The Plaintiff's claims for punitive damages [are based on Defendants' conduct as described more fully] through a liability report prepared by Cecil H. Lane, Jr. of the SALT Institute, 5251 North 16th Street, Suite 200, Phoenix, Arizona 85016 [("SALT Report")].

Defendant Wesolowski's date of birth is January 5, 1975. Wesolowski was 28 years old when hired by Diamond State, [on June 30, 2003]. Wesolowski drove flat bed trucks for Mike Freeman Trucking in December 2000, two and one-half years before being hired by Diamond State. To [legally] drive flat bed trailers, [pursuant to FMCSR §383.91], a driver must possess a class A CDL.

The SALT Report relies on the Transaction History Inquiry for Wesolowski from the State of Arkansas to allege Wesolowski's Class A CDL was issued on May 23, 2003.

Part 391.23 of the Regulations requires truck driving companies to perform two (2) pre-

---

[1] The groupings of the SALT Report opinions set forth herein were originally used by Defendants in their Brief in Support of Defendants' Motion for Partial Summary Judgment (Document No. 36) and were also used by Plaintiff in her Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment (Document No. 43).

[2] The following facts are based upon Defendants' Statement of Material Facts (Document No. 37) and Plaintiff's Responsive Concise Statement of Material Facts (Document No. 41). Any additional material facts in the record but not offered by the parties are indicated in brackets. Any facts proposed by the parties but not contained in the following recitation of facts were found by the Court to remain disputed.

3

employment checks relating to hiring safe and prudent drivers; first, a driving history for the 3 years prior to hire must be obtained from the state issuing the driver's CDL, and second, the trucking company must investigate the driver's employment history for the 3 years prior to hire. Diamond State obtained a Motor Vehicle Report from DAC Services which showed a clear [commercial] driving record for Wesolowski for the last three years prior to the date of Wesolowski's hire. Diamond State did not obtain a motor vehicle records check for Wesolowski's non-commercial driver's license. Diamond State also contacted each of Wesolowski's employers for the three years prior to hire to track his employment history. The Regulations do not require a trucking company to obtain a potential driver's criminal record. The SALT Report confirms that no regulation required Diamond State to obtain a criminal record for Wesolowski.

Wesolowski was not issued a citation at the scene of the accident, however, he received a citation by mail after he returned to his residence.

The Plaintiff requested Diamond State to provide "electronic or satellite vehicular movement records or documents." Diamond State responded, "The Defendants are not in possession of any documents responsive to this request. By way of further response, in 2003 Diamond State Trucking, Inc. employed QUALCOMM Inc. to provide satellite movement services. Q-track Windows was installed on a computer and accessed via a dial-up modem. That system has since been upgraded by Diamond State Trucking, Inc. Diamond State Trucking, Inc. contacted QUALCOMM and was informed by QUALCOMM that it is no longer in possession of any message or position data for the period of July-August 2003. Please see March 30, 2006 correspondence from QUALCOMM Inc. to Diamond State Trucking, Inc. confirming lack of data, attached hereto." QUALCOMM likewise

reponded that it did not possess any documents responsive to the Plaintiff's request.

Roy Honeycutt [Diamond State Safety Director] was not at the accident scene at any time material to the Plaintiff's cause of action.

### III. STANDARD OF REVIEW

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S.Ct. 2548, 2552-57, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. and Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638 (3d Cir. 1993)].

*Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

5

*Adickes*, 398 U.S., at 158-159, 90 S.Ct., at 1608-1609. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 - 2514, 91 L.Ed.2d 202, 216 (1986).

## IV.   APPLICABLE LAW

As this is a diversity case, Pennsylvania substantive law applies. *Hanna v. Plummer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Plaintiff seeks punitive damages based upon claims against Defendants sounding in negligence. As discussed in this Court's September 1, 2006 Memorandum Opinion on Defendants' motion to dismiss, Pennsylvania law is well settled that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citing *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)); *see also Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963) (applying the punitive damages standard found in Restatement (Second) of Torts Section 908(1) (comment b) to an assault and battery action). "[W]hen assessing the propriety of the imposition of punitive damages, 'the state of mind of the actor is vital. The act, or failure to act, must be intentional, reckless, or malicious.'" *Hutchinson*, 870 A.2d at 770 (citations omitted). The reckless indifference standard applicable to assessing the mental state of mind necessary to impose punitive damages requires that "1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that 2) he acted, or failed to act, as the case may be, in conscious disregard of that risk."

*Hutchinson*, 870 A.2d at 772.

Since the issuance of the *Hutchinson* Opinion, Chief Justice Cappy of the Pennsylvania Supreme Court clarified the important distinction between negligence and punitive damages claims:

> Damages awarded in a negligence action compensate a plaintiff for his or her losses. Punitive damages, in contrast, are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious. Such punishment should not be meted out to every defendant who is found to have acted negligently; rather, it should be reserved for those cases in which the defendant has acted in a particularly outrageous fashion.

*Phillips v. Cricket Lighters, et al.*, 883 A.2d 439, 446 (Pa. 2005) (citations omitted). We now turn to applying these principles to the matter *sub judice*.

## V. ANALYSIS

The issue here is whether Plaintiff has presented sufficient evidence to create a jury question as to whether Defendants' actions exhibited a reckless indifference to the interests of others.[3] After careful review, this Court concludes that Plaintiff has met this burden with respect to opinions 1 and 2, to the extent they relate to Wesolowski's training, and with respect to opinions 3, 4, 5, 7, 8, and 9 of the SALT Report. Plaintiff has not met this burden with respect to opinions 1 and 2, to the extent they relate to Wesolowski's commercial driving experience, or with respect to opinions 6, 10, 11, 12 and 13 of the SALT Report.

---

[3] Given the absence of discussion as to any evidence of an evil motive on the part of Defendants, the parties, apparently, agree that Plaintiff's punitive damages claims are limited to Defendants' alleged reckless indifference (Document Nos. 36; 43).

7

A.   **SALT Report Opinions 1, 2, 3, 4, 5, 7, 8 and 9.**

   1.   **Defendant Wesolowski's commercial driving experience and training (SALT Opinions 1 and 2).**

Plaintiff contends that Diamond State allowed Defendant Wesolowski to operate commercial vehicles with inadequate experience and training (Document 43, p. 4).

   a. Defendant Wesolowski's inadequate experience.

The SALT Report specifically states that Wesolowski had "little to no experience" operating commercial motor vehicles. (Document 36-2, Exhibit A, p. 16). This bold conclusion is based solely upon Plaintiff's assertion that Wesolowski first obtained his CDL on May 23, 2003, approximately one month before he was hired by Diamond State. To this end, Plaintiff contends that the License Transaction History establishes that Wesolowski first obtained his CDL on May 23, 2003 (Document Nos. 36-6, Exhibit E; 43, p. 4). Defendants, however, dispute the May 23, 2003 date by pointing to the February 26, 1998 entry on the License Transaction History which provides that Wesolowski obtained his"CDS:A" on February 26, 1998 (Document 36). As demonstrated by the highlighted portions of the License Transaction History set forth earlier in this Opinion, the parties point to two different columns in referring to Wesolowski's license classification. This dispute as to the date upon which Defendant Wesolowski obtained his CDL, however, is of no consequence.

Regardless of when Wesolowski first obtained his commercial license, Mr. Lane's opinion that Wesolowski had "little to no experience" is not based upon any of the facts of record which relate to Wesolowski's experience as a truck driver. Mr. Lane effectively ignored the facts relating to Defendant

8

Wesolowski's truck driving experience and work performance with Buddy Bean Building, Mike Freeman Trucking and Coleman Dairy, the types of trucks driven by Wesolowski and the number of driving hours he logged (Document 36-2, Exhibit A).

As such, Mr. Lane's conclusion that Defendant Wesolowski "had little to no experience" is simply not based upon the record and, therefore, cannot be relied upon to support a claim for punitive damages. *See Viener v. Jacobs, et al.,* 834 A.2d 546, 558 (Pa. Super. 2003) (it is well settled that expert testimony is incompetent if it lacks an adequate basis in fact) (citations omitted); *Collins v. Hand,* 246 A.2d 398, 404 (Pa. 1968) (an expert cannot base his opinion on facts which are not warranted by the record). Accordingly, Defendants' motion as to Mr. Lane's opinion that Defendant Wesolowski "had little to no experience" is granted.

### b. Defendant Wesolowski's inadequate training.

Plaintiff claims that the training provided to Wesolowski was woefully inadequate because he was a new driver and received only 8 hours of training (Document No. 36-2, Exhibit A, p. 16). The SALT Report opines as follows:

> Industry standard driver orientation and training for new drivers is two to three days. Wesolowski's training took place during an eight hour period. It is inconceivable Wesolowski, a new CDL driver, could have received useful training on the 112 subjects documented by DSTI during this short period.

Document No. 36-2, Exhibit A, p. 16.

Defendants argue that this opinion that the training was inadequate is not based upon the facts

9

of record because it relies upon the aforementioned, unsubstantiated determination that Wesolowski was inexperienced.

Page 11 of the SALT Report, however, also states that "[i]ndustry standards for orientation and training, **even for an experienced driver**, consists of at least two to three days" (Document Nos. 36-2, Exhibit A, p. 11) (emphasis added). Therefore, Mr. Lane's opinion that Wesolowski received inadequate training is not predicated entirely upon the conclusion that Wesolowski was an inexperienced driver. Conceivably, Mr. Lane could have reached the same determination that Diamond State's one day of training falls below industry standards even if he assumed that Wesolowski was an experienced driver.

Additionally, Defendants contend that Mr. Lane's claim that Wesolowski received only eight hours of training is arbitrary and not supported by the record. While Defendants do not concede that Wesolowski only received eight hours of training, they do admit that Wesolowski received all of his training from Diamond State on June 30, 2003 (Document No. 44-6, Appendix 5). Again, given Mr. Lane's opinion that standard training and orientation last two to three days, his conclusion that the training received by Wesolowski was inadequate is not necessarily predicated on the determination that his training only lasted eight hours. Conceivably, he could have reached the same conclusion even if he assumed Wesolowski's training lasted twelve hours or even a day and a half. Additionally, Plaintiff has proffered sufficient facts regarding Wesolowski's training to submit the issue of the adequacy of that training to the jury. As such, Defendants' motion, as to Mr. Lane's opinion that Wesolowski received inadequate training from Diamond State, is denied.

10

### 2. Diamond State's Pre-Employment Investigation of Wesolowski (SALT Opinions 3, 4, and 5).

The parties agree on the following facts regarding Diamond State's pre-employment check of Defendant Wesolowski: (1) Diamond State obtained his commercial driving record for the previous three years, (2) Diamond State obtained his non-commercial driving record for the period May 23, 2003 to June 20, 2003, (3) Diamond State obtained his employment history for the previous three years, and (4) Diamond State did not obtain a criminal check for Wesolowski. The parties disagree as to whether Diamond State's pre-employment check complied with FMCSR Part 391.23 and industry standards. In light of the facts of record relating to Wesolowski's non-commercial driving record and Roy Honeycutt's testimony that he would not have hired Wesolowski based upon the information contained in that record, Diamond State's failure to check Wesolowski's non-commercial driving record may be considered by the jury for purposes of assessing whether punitive damages are appropriate. Defendants' motion as to opinions 3, 4 and 5 of the SALT Report is, therefore, denied.

### 3. Diamond State's log recording policy resulted in Wesolowski operating in a state of fatigue at the time of the accident (SALT Opinions 7, 8 and 9).

Facts relating to Diamond State's log recording policy, the accuracy of Wesolowski's logs at the time of the collision, and whether Wesolowski was operating in a state of fatigue at the time of the collision are disputed by the parties. Plaintiff contends, in opinions 7, 8 and 9 of the Salt Report, that (1) Diamond State required its drivers to falsify their logs in violation of FMCSR Parts 390.13, 390.35, 395.2 and 395.8; (2) that Wesolowski "to a high degree of probability" had exceeded the maximum safe and legal hours of service at the time of the collision in violation of FMCSR Parts 392.3 and 395.3; (3) that Wesolowski had falsified his logs; and (4) that, "to a high degree of probability," Wesolowski was

11

operating in a state of fatigue at the time of the collision. Defendants respond that the record does not support Plaintiff's contentions and, in fact, establish that Wesolowski did not falsify his logs and was not over hours at the time of the accident. A review of the record reveals that issues of fact exist as to Wesolowski's logs and condition at the time of the collision. Such determinations are not appropriate for summary judgment and should be determined by a jury. Defendants' motion as to opinions 7, 8 and 9 of the SALT Report is denied.

### B.    SALT Report Opinions 6, 10, 11, 12 and 13.

While the facts raised in opinions 1, 2, 3, 4, 5, 7, 8, and 9 may have been a substantial factor in causing Plaintiff's injuries, the facts and conclusions raised in the remaining opinions of the SALT Report, opinions 6, 10, 11, 12, and 13, could not have been casually related to the accident in question. For instance, in opinion 6 of the SALT Report, Plaintiff claims Diamond State violated FMCSR Part 382.303 by not performing a post accident drug and alcohol test of Wesolowski. Diamond State refutes this contention. Assuming Diamond State did violate Part 382.303, Diamond State's failure to administer such a test was not a substantial factor in bringing about the subject collision. Likewise, the facts raised in opinion 10 of the SALT Report relating to Diamond State providing misleading information concerning Wesolowski's movement and communication in the days leading up to the collision, facts which are disputed by Defendants, did not proximately cause Plaintiff's injuries. Opinions 11 and 12, that Roy Honeycutt lacked the ability to serve as Safety Director and failed to perform his duties properly, and opinion 13, that Diamond State failed to retain logs, movement records, communications data and operational documents in accordance with FMCSR, are also based

upon facts which are in no way causally related to the subject accident or injuries sustained therein.

Because the facts and conclusions set forth in opinions 6, 10, 11, 12 and 13 of the SALT Report were not substantial factors in bringing about harm to Plaintiff, they are not a proper basis upon which punitive damages may be awarded. *See e.g. Flora v. Ferguson*, 1990 WL 9381 at *5 (E.D. Pa. 1990) (holding that alleged violations by defendant motor carrier of the FMCSR relating to minimum levels of financial responsibility were not a proper basis upon which to award punitive damages because those alleged violations could have proximately caused plaintiff's injuries); *Pittman v. W.W. Transport, Inc. et al.*, 2001 WL 1352914 at *1 (E.D. Pa. 2001) (dismissing claim for punitive damages based upon defendants' alleged FMCSR violations for failure to maintain certain documents as defendants' inability to locate and produce bills of lading, accident registrar and driver's log was not casually related to the subject accident). Accordingly, this Court finds that Plaintiff's punitive damages claims based upon opinions 6, 10, 11, 12 and 13 of the SALT Report fail as a matter of law. Defendants' motion will, therefore, be granted as to the facts and conclusions set forth in SALT Report opinions 6, 10, 11, 12 and 13.

**AND NOW**, this 3rd day of August, 2007, after consideration of the Defendants' Motion for Partial Summary Judgment (Document No. 35), in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that Defendants' Motion is **GRANTED** in part and **DENIED** in part as follows:

1.) Defendants' Motion is granted with respect to Plaintiff's reliance on the following opinions, facts and/or conclusions set forth in the SALT Report:

> A.) the opinions, facts and conclusions set forth in Opinions 1 and 2 to the extent they relate to the opinion that Defendant Wesolowski was an inexperienced commercial driver;
>
> B.) the opinions, facts and conclusions set forth in Opinion 6;
>
> C.) the opinions, facts and conclusions set forth in Opinion 10;
>
> D.) the opinions, facts and conclusions set forth in Opinion 11;
>
> E.) the opinions, facts and conclusions set forth in Opinion 12; and
>
> F.) the opinions, facts and conclusions set forth in Opinion 13.

2.) Defendants' Motion is denied in all other respects.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

14